JANUARY TERM, 1882, No. 286.      MARCH 7TH, 1882.

## Zimmerman *versus* Miller.

1. The charter of a savings bank provided for the election of trustees, and that "five of the said trustees shall form a quorum, and that the affirmative vote of at least five shall be requisite to authorize the sale or transfer of securities." *Held,* That a trustee of the bank to whom the cashier had transferred and delivered notes owned by the bank, in pursuance of an arrangement between them under which the trustee paid certain pressing debts of the bank, had no title to these notes.

2. The same rules as to the power and authority of a cashier cannot be applied to the transactions of a savings bank as to banks of discount and circulation.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUN-KEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Lehigh County.*

Replevin by Edwin Zimmerman against Daniel H. Miller, assignee of the Franklin Savings Bank, to recover possession of two promissory notes. Upon the trial in the Court below before ALBRIGHT, P. J., the following facts appeared:

The Franklin Savings Bank was incorporated ·by act of Assembly approved February 9th, 1870. The charter provided, *inter alia :*

"SECTION 4. That the persons named in the first section of this act, or any five of them, shall elect by ballot persons, either from those named in this act or others, to be first trustees of the said corporation; no person to be considered elected unless he shall have received the affirmative vote of at least five of said corporators; that vacancies by death, resignation or otherwise shall be filled by the board of trustees, as soon as practicable, by the affirmative vote of at least five of their number at any election held by ballot; that the said trustees shall elect, from among themselves, a president and vice-president, and shall appoint such other officers as they may deem necessary; that five of the said trustees shall form a quorum; and that the affirmative vote of at least five shall be requisite to authorize the sale or transfer of securities or the appointment of any officer receiving compensation; that the president and vice-president, or any trustees, or any officer or servant of the said corporation, shall not, directly or indirectly, borrow the funds of the said corporation, nor •any part thereof, nor use the same, nor any part thereof, in any other manner than that hereinbefore provided, except for the payment of the necessary expenses under the direction of the board of trustees; that the said trustees shall meet regularly, at least once a month, and that

[Zimmerman *v.* Miller.]

any trustee omitting to attend the said regular meeting for six successive months, may, by a vote of the board, be declared to have vacated his office ; that the said trustees shall have power to enact by-laws."

The plaintiff testified in substance, that in 1877 Jacob E. Zimmerman was cashier of the bank ; that the plaintiff was a director or trustee, and a depositor in the bank, which was indebted to him between nine and ten thousand dollars ; that the bank was indebted to a number of people, and debts were becoming due that it could not pay ; and that at that time the bank held two notes of $2000 each, drawn by D. O. Saylor, which were the notes in dispute.

Plaintiff then proposed to prove that in June, 1877, he met Jacob E. Zimmerman, the cashier of the Franklin Savings Bank, and with him made an arrangement that the two notes of David O. Saylor, which were produced by the defendant on call, were to be delivered over to the witness as his property, together with other notes and securities by the bank held, and that the witness was to pay in consideration therefor the debts of the bank to other parties due and pressing at the time ; that in consequence of this arrangement the witness did so pay the sum of $4630, debts of the bank, and the notes in question, together with some other securities, were delivered over and transferred by the cashier of the bank to the witness.

This was objected to by defendant :

1. Because it is not shown that Jacob E. Zimmerman was a corporate officer, or an executive officer of the corporation known as the Franklin Savings Bank.

2. Because the acts and declarations of Jacob E. Zimmerman, in the absence of affirmative proof of his relation to the corporation, were incompetent and irrelevant.

3. Because by the charter of the Franklin Savings Bank there is no such officer as cashier, nor by the terms of the charter has any such officer any control or custody over the papers or assets of the bank.

4. As incompetent and irrelevant.

The Court said : " By the charter of the bank it appears that the deposits of the bank shall be invested in stocks of this Commonwealth and of the United States, or in the stocks and bonds of any city, authorized to be issued by any act of this Commonwealth, or any stocks, bonds and mortgages, or other approved and valid securities, and that five of the trustees shall constitute a quorum, and that the affirmative vote of at least five shall be requisite to authorize the sale or transfer of securities, and that, the president, vice-president, or any trustee, or any officer or

[Zimmerman *v.* Miller.]

servant of the corporation, shall not directly or indirectly borrow the funds of said corporation, or any part thereof, nor use the same, nor any part thereof, nor in any other manner than that above referred to, except for the payment of the necessary expenses under the direction of the board of trustees. There is no offer to show that the cashier was authorized to make the disposition of the notes in suit, alleged to have been made in the offer, nor that the trustees afterwards ratified that arrangement, and there is by the charter no special power vested in the cashier, the charter, in fact, not providing for any such officer, excepting generally by providing that the trustees shall appoint such other officers as may be deemed necessary."

The objection was sustained, and the evidence was excluded, to which ruling plaintiff excepted.

Plaintiff then renewed the offer, to be followed by proof that at the time this arrangement was made, in June, 1877, suits had been brought against the Franklin Savings Bank on some of the claims paid by the witness, and execution was issued; also that the notes of D. O. Saylor, produced at bar by the defendant on call, were in the possession of the witness, and that they afterwards, without the knowledge and consent of the witness, came into the possession of the defendant, who on demand therefor made refused to deliver them up to the witness.

The defendant objected to the offer as incompetent and irrelevant.

The Court held: " The question here raised is in substance ruled under the last preceding offer. It is necessary for the plaintiff in this issue to show either general or special property, and right of possession in and to the articles claimed for, viz., the notes. The question in reality is as to whether the plaintiff, even if he at one time had the notes in possession, had title thereto, and the Court has already decided that in its opinion the transfer by the cashier was not effective to vest the title in the plaintiff."

The objection was sustained and the testimony was excluded, and a bill was sealed for the plaintiff.

January 25th, 1882. Verdict for the defendant, upon which judgment was subsequently entered.

The plaintiff then took out a writ of error, assigning as errors the overruling of the above offers, and the direction of the Court to the jury to render a verdict in favor of the defendant.

*John Rupp* and *C. J. Erdman*, for the plaintiff in error.

The cashier of an incorporated bank is the general execu-

tive officer to manage its concerns, and generally to transact the business of the bank. Though chosen by the board of directors, he is as much the statute agent of the bank as the directors themselves: Bissell v. First National Bank of Franklin, 19 Smith, 415; Ziegler v. First National Bank of Allentown, 12 Norris, 393; Bank of Kentucky v. The Schuylkill Bank, 1 Parsons' Reports, 180; Lloyd v. The Bank, 3 Harris, 172; R. R. E. v. Vandiver, 6 Wright, 365; Nippenose Man. Co. v. Stadon, 18 P. F. Smith, 256.

It is conceded that a corporation has no powers except such as are given in the charter by plain words or by necessary implication: Commonwealth v. The Erie and Northeast R. R. Co., 3 Casey, 339; Pittsburgh and Steubenville R. R. Co. v. Allegheny County, 29 Smith, 210.

But such charters must receive a reasonable construction. They must be so construed as not to destroy the manifest object and intent for which the corporation was created, but so as to further and subserve that object and intent: Cleveland, Painesville and Ashtabula R. R. Co. v. The City of Erie, 3 Casey, 380.

Statutes are to be so construed as best to effectuate the intention of the legislature, though such construction seem contrary to the letter: The Commonwealth v. Fraim, 4 Harris, 163.

Even if the cashier of the bank did not have the power to make the contract that he did make with the plaintiff, and did not have the authority to transfer these notes, and the contract was *ultra vires*, the bank cannot repudiate the contract and keep the notes after receiving the benefits of the contract. The bank cannot hold the notes without repaying to the plaintiff the money paid by him for its benefit and at its special instance and request: Oil Creek and Allegheny River R. R. Co. v. Penna. Transportation Co., 2 Norris, 160.

The familiar principle of the law of agency applies to this case, that where an agent enters into a contract for his principal, which is not within the scope of his authority, the principal may repudiate the contract altogether, but he cannot take the fruits of the contract and then refuse performance on his part: Story on Ag., § 253; Horter v. Silliman, 3 W. N. C., 405; Kelsey v. The National Bank of Crawford County, 19 Smith, 426.

The law is well settled that a principal who neglects promptly to disavow an act of his agent by which the latter has transcended his authority, makes the act his own, and the maxim which makes ratification equivalent to a precedent authority is as much predicable of a corporation as it

is of ratification by any other principal, and is equally to be presumed from the absence of dissent: Bredin *v.* Dubarry, 14 S. & R., 27 ; Gordon *v.* Preston, 1 Watts, 387.

*Edward Harvey* and *Thomas B. Metzger*, for defendant in error.

The bank was organized as a bank of deposit only. A bank owes its powers, as it owes its existence, to the terms of the charter: Morse on Banks, p. 35.

Whenever the organic act restrains the manner of transferring securities or imposes an absolute or qualified restraint on alienation, it must be observed: Burton's Appeal, 7 P. F. Smith, 218; Ardesco Oil Co *v.* North American Oil Co., 16 P. F. Smith, 382.

It cannot be claimed that the cashier of this institution, merely because he is called cashier, can use and exercise all the inherent powers that belong to that officer as commercially understood. *First*, the Franklin Savings Bank is not a bank in the usual sense of that term, but is a depository or saving fund. Its charter provides for a board of management, whose control over the securities in which the deposits are clothed is exclusive. Their affirmative action is indispensable to a transfer of them. *Second,* the charter is silent as to the office of cashier. In the National Bank Act the cashier is expressly named as an officer of the association. In the Act of May 1st, 1861, P. L., 508, a cashier is provided for as an officer of banking companies organized in Pennsylvania. Where he is expressly named he is as much an officer as the director or président: Bank of Ky. *v.* Schuylkill Bank, 1 Pars. Eq. Cases, 240.

We are asked, in the second place, if the bank can repudiate the contract and keep the notes. This is not the case where the act may have been *ultra vires*, yet the law implies a promise to pay because the consideration was received. We are trying an action of replevin, in which the plaintiff must establish ownership in himself in the notes declared upon. Do those notes belong to the plaintiff? They were not indorsed to him by any officer of the savings bank; they were not in his possession when suit was brought, but were in the possession of a voluntary assignee of the bank for the benefit of creditors; and if the notes even were in his possession, certainly they were not when the assignment was made. To show title he offers in evidence the charter and proposes to prove a contract in palpable violation of its provision. We do not set up the illegality ; his proof shows it. By the proposed offer it does not appear that any money was paid to the bank. If the bank's creditors were paid by

[School District of Denison Township *v.* Shortz *et al.*]

the director, he became the equitable owner of their claims. They were not extinguished by payment.

MARCH 20TH, 1882.—PER CURIAM: The same rules cannot be applied to the transactions of a savings bank as to banks of discount and circulation. The cashier had no authority according to the charter to transfer the securities, which must be made by an affirmative vote of at least five trustees. We entirely agree with the learned Court below, and think the instruction to the jury to find a verdict in favor of the defendant was right.

Judgment affirmed.